**Michael GERASIMOU and Stephan Gerasimou, by their parent, Helen GERASIMOU, Plaintiffs,**

v.

**Gordan AMBACH, as Commissioner of Education of the State of New York and Anthony Alvarado, as Chancellor of the Board of Education of the City of New York, Defendants.**

No. CV 83–2552.

United States District Court,
E.D. New York.

June 11, 1986.

Robert & Schneider by Charles Robert, Hempstead, N.Y., for plaintiffs.

Kenneth Pawson, State Educ. Dept., Albany, N.Y., for defendant Ambach.

Frederick A.O. Schwarz, Jr., Corp. Counsel by Noel H. Ferris and Elizabeth Dale Kendrick, New York City, for defendant Alvarado.

WEXLER, District Judge.

Plaintiff Helen Gerasimou brings this action on behalf of her minor twin sons, Michael and Stephan Gerasimou, pursuant to the Education for All Handicapped Children Act ("EAHCA" or "Act"), 20 U.S.C. §§ 1401–1461, and 42 U.S.C. § 1983, against defendants Gordon Ambach, as Commissioner of Education of the State of New York ("Commissioner") and Anthony Alvarado, as Chancellor of the New York City Board of Education ("Chancellor"). Plaintiff seeks reversal of an educational placement decision made pursuant to the EAHCA, changes in the policy and procedures implementing the EAHCA, reimbursement for private school tuition, reimbursement for transportation costs, witness and attorneys fees and costs, and damages stemming from violations of the EAHCA and of the constitutional right to due process.

The Chancellor and the Commissioner now move to dismiss plaintiff's complaint. Defendants contend that the action is untimely and fails to state claims under either the EAHCA or § 1983. Additionally, the Commissioner argues that the Eleventh Amendment to the United States Constitution bars any award to plaintiff of money damages against the state. U.S. CONST. amend. XI. Plaintiff opposes the motions to dismiss.

## I.

Michael and Stephan Gerasimou are fraternal twins who were born on November 4, 1977. Michael is, for lack of a better term, moderately autistic. While he does not meet the criteria of severe autism established by the American Psychiatric Association, he exhibits classic symptoms of autism that meet the definition of early infantile autism and the Board of Education's broad definition of autism. Stephan, while not affected by the condition to the same extent as his brother, exhibits many of the behavior patterns and deficits of autism.

From the time of the twins' birth until December 1982, plaintiff and her children resided in Queens County in the City of New York. In 1981, plaintiff enrolled the twins in a Syosset, New York private school Pre-Schoolers Workshop ("PSW"). Pursuant to a Family Court Order, the City of New York paid for the school's tuition. On July 14, 1982, the Committee on the Handicapped ("COH") of Queens District 25, the school district in which the twins resided, issued a formal notice recommending that the children be placed for kindergarten in the program for autistic students at Public School 154 ("P.S. 154") in Queens. The COH made its decision after several meetings with plaintiff and review of the evaluations and recommendations of teachers and psychiatric experts.

Despite the COH recommendation, plaintiff enrolled her children in the Syosset

private school PSW for the 1982–83 school year and challenged the COH's placement, contending that the fragility of her sons' conditions would cause them to suffer trauma and significant regression if their educational setting were changed.[1] Hearings before an impartial hearing officer were held during the fall of 1982, and in early December 1982, the hearing officer rendered decisions upholding the COH recommendation and denying plaintiff's application for tuition reimbursement and damages. *In the Matter of the Appeal of the Recommendation of the Sub-Committee of the Committee on the Handicapped by his parent for Stefan [sic] Gerasimou* (Impartial Hearing Officer Harry Weintraub, Dec. 1, 1982); *In the Matter of the Appeal of the Recommendation of the Sub-Committee of the Committee on the Handicapped by his parent for Michael Gerasimou* (Impartial Hearing Officer Harry Weintraub, Dec. 2, 1982).

Shortly after the hearing officer's decision, plaintiff purchased a house in Great Neck, New York. Plaintiff moved to Great Neck in the hope that the board of education there would be more willing to accommodate her sons' needs.

Plaintiff meanwhile appealed the hearing officer's rulings to the Commissioner. In a decision dated February 11, 1983, the Commissioner held that the issue of placement was mooted by the plaintiff's change of residence and denied the request for tuition reimbursement and compensatory damages. *In the Matter of the Application of Two Handicapped Children, by Their Parent, for Review of a Determination of a Hearing Officer Relating to the Provision of Educational Services by the City School District of the City of New York,* (New York State Education Commission, Feb. 11, 1983). Plaintiff's attorney received a copy of the decision on February 17, 1983. On June 14, 1983, plaintiff filed the action now before the Court.

## II.

Defendants contend that plaintiff's suit was not filed in timely fashion and therefore must be dismissed. As the EAHCA does not contain a statute of limitations, one must be borrowed from an analogous state law provision. *Board of Regents of the University of the State of New York v. Tomanio,* 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). The defendants argue that review by a federal court under § 1415(e)(2) of the EAHCA, 20 U.S.C. § 1415(e)(2), is analogous to Article 78 proceedings in New York's state courts, N.Y. Civ.Prac.Law §§ 7801–7806, which are governed by the four-month statute of limitations contained in N.Y.Civ.Prac.Law § 217. Plaintiff asserts that N.Y.Civ.Prac.Law § 214(2)'s three year statute of limitations, applicable to § 1983 actions, *Pauk v. Board of Trustees of the City University of New York,* 654 F.2d 856 (2d Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982), should govern this case.

In *Quackenbush v. Johnson City School District,* 716 F.2d 141 (2d Cir.1983), *cert. denied,* 465 U.S. 1071, 104 S.Ct. 1426, 79 L.Ed.2d 750 (1984), the Second Circuit squarely addressed the applicability of § 1983 to claims under the EAHCA, and concluded that Congress intended § 1415(e)(2) to be an exclusive remedy, which can neither be supplemented nor replaced by claims under § 1983. The Second Circuit held that when state administrative processes have run their course, concluding in findings and a decision, a cause of action under § 1983 is not available. *See also Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); *Bonar v. Ambach,* 771 F.2d 14 (2d Cir.1985); *Council for the Hearing Im-*

---

**1.** There is some indication that plaintiff does not believe the Queens P.S. 154 autistic program kindergarten is appropriate for her children. According to one expert report, the Gerasimou twins are not autistic but suffer from an "atypi-

cal specific developmental disorder" and might not benefit from a program for autistic children. (Letters of Dr. Lawrence Sheff, M.D., Feb. 12, 1982 and May 11, 1982, Chancellor's Ex. H).

*paired Long Island, Inc. v. Ambach*, 610 F.Supp. 1051 (E.D.N.Y.1985).

It is true that, when considering the specific situation presented by *Quackenbush*, the Second Circuit carved out an exception to the general rule itself had laid down. Official misconduct had deprived Quackenbush of the administrative review provided by the EAHCA; the plaintiff therefore had not technically been aggrieved by administrative findings and decisions from which she could seek judicial review under § 1415(e)(2). The *Quackenbush* court decided that, in the absence of an available remedy under the EAHCA, § 1983 could properly be used as a means of affording relief otherwise unavailable. *Id.* at 147–48.

In the instant case, however, plaintiff has had the full review procedure provided by the EAHCA. Michael and Stephan Gerasimou were evaluated by the COH, and the recommended placement was reviewed by both an impartial hearing officer and the Commissioner. Accordingly, plaintiff's claims arise solely under the EAHCA, and she does not have available to her a cause of action under § 1983.

It is clear, therefore, that the statute of limitations applicable to EAHCA claims, rather than that utilized in § 1983 actions, must govern this case. It is equally clear that defendants are correct in their contention that N.Y.Civ.Prac.Law § 217's four month time bar applies to this lawsuit: In *Adler v. Education Department of the State of New York*, 760 F.2d 454 (2d Cir. 1985), the Second Circuit held that, as defendants have argued, an action pursuant to § 1415(e)(2) is indeed comparable to New York's provisions for an Article 78 proceeding, and, accordingly, a four month limitations period applies to cases brought pursuant to the EAHCA.

Defendants assert that the filing of this action on June 14, 1983 and service of the summons and complaint thereafter was not within the four month time limit; hence, plaintiff's EAHCA claims are barred. Resolution of this issue involves analysis of the interplay between several doctrines. First, it is well established that where the right asserted is created by federal statute, the time of commencement of the action is determined by federal law. *E.g., Preveza Shipping Company v. Suncrest Corp.*, 297 F.Supp. 954 (S.D.N.Y. 1969); *Henkin v. Rockower Bros., Inc.*, 259 F.Supp. 202 (S.D.N.Y.1966); 4 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1056. Fed.R.Civ.P. 3 provides that "[a] civil action is commenced by filing a complaint with the court." In federal court, therefore, filing ends the running of the limitation period. *Bomar v. Keyes*, 162 F.2d 136 (2d Cir.), *cert. denied*, 332 U.S. 925, 68 S.Ct. 166, 92 L.Ed. 416 (1947); *Davis v. Krauss*, 478 F.Supp. 823 (E.D.N.Y. 1979).

Similarly, when the claim arises under federal law, it is federal law that determines when the claim accrues. *E.g., Pauk*, 654 F.2d 856; *Singleton v. City of New York*, 632 F.2d 185 (2d Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); *Phillips v. Levie*, 593 F.2d 459 (2d Cir.1979). Generally, a cause of action accrues when a plaintiff "knows or has reason to know" of the injury or event that is the basis of his claim. *Singleton*, 632 F.2d at 191. While there is no case law that directly addresses when a claim accrues under the EAHCA, the Court concludes that a party's right to seek review under § 1415(e)(2) accrues when he receives notice of a final decision by the Commissioner. *Cf. Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981); *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980); *Pauk*, 654 F.2d at 861.[2]

---

**2.** This comports with the New York courts' application of § 217. Under New York law the time limit commences to run for an Article 78 proceeding when the affected party has notice of a determination. *Cabrini Medical Center v. Axelrod*, 107 A.D.2d 965, 484 N.Y.S.2d 695 (3d Dep't 1985); *Bernstein v. Popolizio*, 97 A.D.2d 735, 468 N.Y.S.2d 888 (1st Dep't 1983); *Kaufman v. Anker*, 66 A.D.2d 851, 411 N.Y.S.2d 388 (2d Dep't 1978). Generally, New York law provides that an action accrues when the facts giving rise to a cause of action are, or through reasonable diligence should have been, discovered. N.Y.Civ.Prac.Law § 203(f).

■ Nevertheless, as § 217 is a state law statute of limitations, the state's method of computing and otherwise tolling the running of the statute applies. *See Tomanio,* 446 U.S. at 484, 100 S.Ct. at 1795; *Railway Express Agency,* 421 U.S. at 464, 95 S.Ct. at 1722; *Wolf v. Frank,* 477 F.2d 467, 475 (5th Cir.), *cert. denied,* 414 U.S. 975, 94 S.Ct. 287, 38 L.Ed.2d 218 (1973); *Wallace v. American Telephone and Telegraph Company,* 460 F.Supp. 755, 757 (E.D.N.Y.1978); 4 C. Wright & A. Miller, *supra,* at §§ 1163, 1164. Under N.Y.Gen. Constr.Law § 30, "months" are computed on the basis of calendar months and calculated so as to fall on the same numbered day of the month as the event that began the running of the time period. In other words, for example, four months from January 15 is May 15.[3]

■ Plaintiff's attorney, in an affirmation and a memorandum of law bearing his signature, states that he received the Commissioner's opinion on February 17, 1983. Defendants have not offered any evidence that plaintiff or her attorney were served or had actual notice of the Commissioner's determination prior to this date. If the February 17 date of claimed receipt is used to start the running of the four month period, then the filing of this action on June 14 is timely.

■ Furthermore, N.Y.Civ.Prac.Law § 2103(b)(2) provides that service by mail is completed when the decision is deposited in the mail, but also adds five days to the limitations period. While § 2103(b) states that it applies to "a pending action," and has been held not to extend a statute of limitations, New York courts have relied upon this provision in determining the issue

of notice and accrual of the right to seek judicial review under Article 78. *E.g., R.E. Associates v. McGoldrick,* 278 A.D. 347, 105 N.Y.S.2d 152 (1st Dep't 1951); *Ralston v. Blum,* 105 Misc.2d 357, 432 N.Y.S.2d 46 (Sup.Ct. Tomkins Co. 1980). There appears to be no dispute that the Commissioner's opinion was served by mail. Assuming the opinion was deposited in the mail on February 11, the date it was issued, service on the plaintiff was completed on that date, but at the same time, such service by use of the mail extended the statute of limitations by five days. Plaintiff therefore had until June 16, 1983 to commence this action.[4] Thus, whether the statute of limitations is considered to have commenced on February 17, the alleged date of actual receipt, or on the date of mailing with the addition of five days as provided in CPLR § 2103(b)(2), the filing on June 14 appears to be within the limitations period. Accordingly, defendants' motions to dismiss the suit as untimely must be denied.

### III.

Defendants further argue that the action must be dismissed because plaintiff seeks relief that is not available under the EAHCA, specifically, money damages. At the time this suit was filed, the law was unsettled on the issue of money damages under the EAHCA, 20 U.S.C. § 1415(e)(2). It is now clear that at least one form of recovery sought by plaintiff is available.

■ In *Burlington School Committee v. Department of Education of Massachusetts,* —— U.S. ——, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), the United States Supreme Court held that, under § 1415(e)(2),

---

**3.** While Fed.R.Civ.P. 3 governs when an action is commenced in federal court, the prevailing view is that Fed.R.Civ.P. 6(a), which deals with the computation of time periods, does not control the manner of counting, computing, or suspending the state law limitations periods that are applied to specific federal cases. 4 C. Wright & A. Miller, *supra,* at § 1164; 2 *Moore's Federal Practice,* ¶ 6.06[2] at 6–71. It is debatable whether Rule 6 is even applicable to the calculation of federal statutes of limitation, although it has sometimes been applied in principle by analogy or after discussion of legislative

intent. 4 C. Wright & A. Miller, *supra,* at § 1163; 2 *Moore's Federal Practice, supra,* ¶ 6.06[1–2] at 6–71—6–74. In any event, in the context of the instant case, Fed.R.Civ.P. 6(a) and N.Y.Gen.Constr.Law § 30 are consistent with each other.

**4.** The result under the former version of § 2103(b)(2), which allowed a three day extension when service was by mail, would be the same. If only three extra days are added to the statute of limitations, the June 14 filing is still timely.

a court can award reimbursement of private school tuition when it is finally adjudged that the private school was the appropriate placement for the child. Moreover, unilateral placement of the child by the parents in a private school is not a violation of 20 U.S.C. § 1415(e)(3) that waives entitlement to tuition reimbursement.

Any award of tuition costs, however, must be predicated on an ultimate determination that the private school placement, rather than the COH's recommended placement, is the proper one. *Burlington School Committee*, 105 S.Ct. at 2002-03. Here, the Commissioner did not determine whether the public school placement was appropriate, but declared the issue moot because Michael and Stephan Gerasimou were no longer under the jurisdiction of the New York City Board of Education. The Commissioner reasoned that since any relief to which plaintiff might be entitled was limited to prospective injunctive relief on the placement issue, and did not include the right to tuition reimbursement, any review of the Queens District 25 COH placement would be meaningless and without effect. In the light of *Burlington School Committee*, the placement issue is not moot. Plaintiff can properly state a claim for recovery of tuition costs for the twins for the four months of private school tuition from September to December 1982. After that period, the Court agrees that the change in residence moots the placement and reimbursement issues. Nonetheless, the ultimate viability of plaintiff's claim for reimbursement will depend on a final decision as to the appropriate placement for that four month period.

It is unclear whether the issue of the appropriate placement for the Gerasimou twins for September to December 1982 should be remanded to the Commissioner for a decision, which would be subject to review by this Court, or whether the Court is now the proper forum for deciding the question. The EAHCA provides that:

> In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(e)(2).

Thus the Court is not limited to a deferential review of the administrative determination based solely on the record below. *Adler*, 760 F.2d at 458. Rather, the Court must make an independent determination based on a preponderance of the evidence, while bearing in mind the Supreme Court's admonition that the courts not "substitute their own notion of sound educational policy for those of the school authorities they review." *Board of Education of the Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 205-06, 102 S.Ct. 3034, 3050-51, 73 L.Ed.2d 690 (1982). As it stands, none of the parties has addressed whether the Court may properly decide the placement issue in the absence of a decision by the Commissioner as to its appropriateness, and the Court does not now resolve the question.

### IV.

Plaintiff also seeks recovery of transportation costs, witness and attorneys fees and damages based on violations of the EAHCA. Additionally, there is some suggestion that plaintiff seeks to recover the expenses and consequential damages connected with moving from Queens to Great Neck. *Burlington School Committee* does not discuss the availability of compensatory, consequential, and punitive damages under the EAHCA. In fact, the Supreme Court specifically declared that tuition reimbursement is not a form of damages, but a retroactive payment of a financial responsibility a school district bore all along. 105 S.Ct. at 2003. Therefore, the Court must seek guidance elsewhere.

In *Anderson v. Thompson*, 658 F.2d 1205 (7th Cir.1981), the Seventh Circuit Court of Appeals determined that a court could not award tuition reimbursement under the EAHCA, 20 U.S.C. § 1415(e)(2), because "damages, however limited, are not within the scope of relief authorized ... absent

exceptional circumstances." *Id.* at 1209–10. While *Burlington School Committee* overrules the Seventh Circuit's holding on the availability of tuition reimbursement, it does not affect the otherwise sound reasoning of the *Anderson* Court on the broad question of the availability of damages under the EAHCA. As the Supreme Court observed in *Burlington School Committee*, the purpose of the EAHCA is to secure for each handicapped child a free appropriate education, and the availability of any remedy under the Act must be assessed in the light of that goal. 105 S.Ct. at 2003. The EAHCA secures the entitlement to a free appropriate education by providing for parental involvement in the child's evaluation and placement and by setting up a detailed review proceeding. *Burlington School Committee* holds that the pendency of review proceedings does not suspend the child's entitlement to a free education in the ultimately appropriate placement. That decision does not conflict with the *Anderson* Court's holding that the contemplated remedy under the EAHCA is the correct placement of the child, not monetary damages, absent a flagrant and egregious disregard of EAHCA procedures redounding to the child's detriment. *Anderson,* 658 F.2d at 1213–14; *accord Miener v. Missouri,* 673 F.2d 969, 979–80 (8th Cir.), *cert. denied,* 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982).

This Court agrees with the Seventh Circuit's conclusion that in fashioning a remedy the Court must look to the mischief the Act was intended to correct. *Anderson,* 658 F.2d at 1213. So long as the school district and the state make a good faith effort to evaluate and place a child correctly, damages are not an appropriate remedy under the EAHCA. The Act clearly was intended to stop the warehousing, isolation, and sloughing off of the handicapped student, or the shifting of the cost of his education to his parents. In pursuit of these goals, Congress established federal funding of educational programs, a mandated evaluation procedure, and a system of review to assure the proper implementation of the Act. The Court concludes that the Act was never intended to allow an individual to collect a monetary award simply because there may have been some misjudgment in the placement of a child. Money damages are only warranted where there has been a bad faith and egregious failure to comply with procedural provisions of the EAHCA.

▮▮▮▮ Plaintiff claims that at various points the evaluation and review proceedings were not conducted in compliance with the EAHCA. The complaint alleges, for instance, that, in violation of 20 U.S.C. § 1415(b), plaintiff was denied the right to present certain evidence and confront witnesses. The Court has some doubts that the alleged violations of the EAHCA review provisions rise to the level of a bad faith and egregious failure to meet the Act's requirements. Nonetheless, a motion for dismissal pursuant to Fed.R.Civ.P. 12(b)(6), is not an appropriate vehicle for weighing factual claims. *Goldman v. Belden,* 754 F.2d 1059, 1065–67 (2d Cir.1985).[5] Lacking any evidence on the matter, much less a body of undisputed facts, the Court must for the purposes of this motion construe the allegations in the light most favorable to plaintiff. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct 99, 101–02, 2 L.Ed.2d 80 (1957). The Court therefore concludes that the plaintiff has alleged violations of the EAHCA procedures that might support a grant of money damages. Accordingly, defendants' motions to dismiss the claims for damages under the EAHCA are denied.

▮▮▮▮ Lastly, the Commissioner invokes the Eleventh Amendment as a bar to plaintiff's recovery of money damages from the state. U.S. CONST. amend. XI.

---

**5.** The Chancellor attaches to his motion to dismiss many of the expert reports and evaluations considered by the COH and hearing officer. Plaintiff's Memorandum of Law quotes extensively from expert testimony and reports. This material played no part in the Court's consideration of the motions to dismiss.

It is clear that the Eleventh Amendment does not render a local school district immune from a suit for money damages. *E.g., Miener*, 673 F.2d at 980. The Eleventh Amendment, however, does bar suits by private parties "seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). A suit against the Commissioner is a suit against his state office, and hence constitutes a claim against the state treasury. *Ford Motor Company v. Department of the Treasury*, 323 U.S. 459, 463–64, 65 S.Ct. 347, 350–51, 89 L.Ed. 389 (1945). Accordingly, insofar as plaintiff seeks money damages against the Commissioner, her suit is barred by the Eleventh Amendment.

## V.

As it appears that plaintiff's action was commenced in timely fashion, the Court denies defendants' motions to dismiss the suit as untimely. The Court also denies defendants' motions to dismiss for failure to state claims under the EAHCA upon which relief can be granted.

The Court, however, concludes that plaintiff cannot state a cause of action under 42 U.S.C. § 1983, and grants the motion to dismiss that claim. Finally, insofar as the plaintiff seeks money damages against the Commissioner, her claims are dismissed as barred by the Eleventh Amendment.

SO ORDERED.